## DAVID MILLER *versus* JOHN BAKER 2d.

Deed of chattels, dated October 3d : I, C. S., in consideration of being justly in debted to D. M. in the sum of &c., secured to him by my promissory note bearing date October 1st, payable in two years with interest, as also in consideration of one dollar, &c., do by these presents grant, bargain, sell, convey and confirm to him the chattels, to have and to hold the same to him to his proper use, and I will warrant and defend the same to him, of all which chattels I have put him in pos session by delivering him a part in the name of the whole. *Held* that this was not a mortgage.

Whether the mortgagee of personal property can maintain trespass *de bonis asporta- tis* against an attaching officer for the taking, before he has given notice of his mortgage and stated his account, and the creditor or the officer has refused or neg- lected to pay his demand and discharge the lien, *quære.*

The party against whom a verdict has been rendered, cannot as matter of right, re- quire the judge before whom the cause was tried, to report the evidence, in order to enable such party to make his motion to the whole Court for a new trial, on the ground of the verdict's being against the evidence or the weight of the evi- dence, but it is a question of judicial discretion with the judge, whether the evi- dence shall be reported.

TRESPASS against the sheriff of Norfolk, or taking (by his deputy, Enoch Bullard) and converting to his own use, certain nursery trees, plants, and shrubs. Plea, the general issue.

At the trial, before *Wilde* J., it appeared in evidence, that Charles Senior, being in possession and claiming to be the owner of the property in question, conveyed the same to the plaintiff, on October 3, 1834, by a deed to the effect following : " Know all men, &c. that I, Charles Senior, &c., in consideration of being justly indebted unto David Miller, &c. in the sum of $1126, secured to said Miller by my promissory note bearing date October 1, 1834, payable in two years with interest, as also in consideration of one dollar, &c., by these presents do grant, bargain, sell, convey and confirm unto the said Miller, &c., all and singular the roots, plants, &c. described in the annexed schedule, &c., now being and remaining in the gardens &c. now occupied and improved by me, &c. ; to have and to hold, &c. to him the said Miller, his heirs, &c. to his and their proper use and benefit for ever, &c., and I will warrant and defend the said premises to the said Miller, &c. ; of all which goods, &c. I have put the said Miller in full possession by delivering him one hundred camellia pots and roots, being a part of said property, in the name of the whole thereof, at the time of the sealing and delivering of these presents."

The chattels in question were attached by the deputy sheriff, as the property of Senior.

It was contended on the part of the defendant, that if this instrument was an absolute sale, there had not been a delivery of the property ; and that if it was a mortgage, there was no legal evidence of its having been recorded before the attachment was made.

The judge ruled, for the purposes of the trial, that the instrument was a mortgage ; to which ruling the defendant objected.

Questions of law were raised on other facts in the case, which it is unnecessary to state.

A verdict was found for the plaintiff, and the defendant moved for a new trial.

*Jun: 13th.*   S. D. *Parker*, for the defendant.

D. A. *Simmons*, for the plaintiff.

*June 25th.*   Shaw C. J. delivered the opinion of the Court. The Court are of opinion, that the deed of Senior to Miller, dated October 3 1834, was not a mortgage of the personal property there-

r mentioned. It possesses all the characteristics of an absolute conveyance ; and there is no defeasance or condition, which is essential to the character of a mortgage. The only color for considering it a mortgage or pledge is, that it recites an indebtment by note, by the grantor to the grantee, and does not in terms declare the conveyance and satisfaction of that debt. Hence it is inferred, that it must have been intended as a security and not in satisfaction. But this implication is too remote.

Since the law has more definitely recognised mortgages of personal property, given under certain restrictions, provided for an equity of redemption, and made such right of redemption liable by attachment for the debts of the general owner, it becomes important, that the condition should not only be expressed, but that the terms should be stated so definitely, as to enable creditors not parties, to ascertain the true character and meaning of the contract, with a good degree of certainty.

As the course of the trial was essentially affected by the question, whether this instrument was a mortgage, and as it was held, for the purposes of the trial, that it was, the Court are all of opinion that the verdict must be set aside, and a new trial granted.

This decision renders it unnecessary to express an opinion upon another question, which may be deemed very material. It arises under the statute, which renders it lawful to attach mortgaged personal property, for the debts of the mortgager, taking precautions to secure the right of the mortgagee to the extent of his lien. The question is, whether the mortgagee can maintain trespass *de bonis asportatis* against an attaching officer for the taking, before he has given notice of his mortgage, and stated his account, and the creditor or the sheriff has neglected or refused to pay his demand and discharge the lien. The argument is, that until such neglect or refusal the attaching officer is not a wrongdoer, and not liable in trespass. It is a question deserving great consideration, on which we give no opinion.

In the motion for a new trial in the present case, it was claimed, as one ground amongst others, that the verdict was against the weight of the evidence ; but the judge who tried

Miller
v.
Baker.

the cause, being satisfied with the verdict in this respect, de-clined reporting the evidence.  On the argument, it was claim-ed as a right which every losing party has, to require the judge at *nisi prius* to report the evidence, in order to enable such losing party to make his motion before the whole Court. This question is one of so much importance in practice, that although not necessary to decide it, in the present case, be-cause the Court have considered the defendant entitled to a new trial on other grounds, the Court think it may be useful to take notice of it.

Ever since the adoption of the *nisi prius* system in this Commonwealth in 1803 and 1804, we have considered it as a settled rule, that it is a question of discretion with the judge at *nisi prius*, to determine, whether on a motion for a new trial, and to set aside a verdict as against evidence, or as against the weight of evidence, he will report the evidence or not.  If in his judgment the verdict is conformable to the preponderance of the evidence, or if the evidence is of such a complicated and confused character, that a report will not and cannot present to the Court a true state of the case as it ap-peared before the jury, it seems to be the duty, as we con-sider it to be the right of the judge, to decline making such a report.  There are many cases in which it is ob-viously impossible, that a written report should present a full, true, adequate state of the case ; as where the testimony is conflicting, where much depends on the appearance, tone, manner and character of the witnesses respectively, where the jurors have much experience and personal knowledge of the subject on which the inquiry turns, or where there has been a view by the jury.  In such and many other cases, which might be suggested, it would be quite impossible to present the case to the Court, upon a report, in the same man-ner in which it was presented to the jury on the trial.

But there is another view of the subject which appears to us to be of great importance, leading to the same result, and that arises from the practical character and consequences of the rule claimed.  It is obvious that in every jury trial, of whatever nature, however complicated and balanced, or sim-ple and preponderating, the evidence may be, there must be a

losing party. It would of course follow that in every case there might be a motion for a new trial, and a claim for a report to support it. Such a motion must of course go to the full Court for argument. When it is considered how honestly and naturally every one engaged in a legal controversy is disposed to think favorably of his own cause, of his own chance of success, if he can try his case over again, it must be obvious to those who are practically acquainted with the subject, to what a very large extent this would increase litigation. Probably the old system of reviews, giving the losing party a second chance in a jury trial as a matter of right, though formerly believed to be a great abuse as a very copious source of expense and vexatious delay, would have even less tendency than the rule insisted on, to multiply trials, delay final decisions, and increase litigation. If a motion may be made as a matter of right to set aside a first verdict, and a judge may be required to make a report to support it, the same may be done on a second, third, and every subsequent verdict ; so that should new trials be so often granted, a judgment could never be regularly rendered on a verdict, until after the decision of the whole Court on overruling a motion for a new trial, on a report of the evidence.

As at present managed these applications are comparatively infrequent, because it is known to experienced counsel, that such a motion is not likely to be sustained in the first instance by the judge who tried the cause, unless there are at least probable grounds on which to rest it.

The practice of allowing new trials is of comparatively recent origin in the law, designed to avoid some possible dangers to which the trial by jury is obviously exposed ; but for a long time it was considered doubtful whether a new trial could be granted, where there was any evidence on both sides, and it was considered that a new trial could only regularly be granted, where the verdict was without evidence or against the whole evidence. It has, however, been extended to cases, where the verdict is clearly against the weight of the evidence, although evidence was given on both sides. In the English practice it is believed that such a motion is never entertained by the court, unless where leave has been expressly given to make

Miller
*v.*
Baker.

such motion, by the judge at *nisi prius*, and in practice such leave is usually given only when he himself entertains doubts of the sufficiency of the evidence, and on the whole is not satisfied with the verdict.    In such cases the facts are usually stated briefly from the judge's minutes, at the hearing.

There are obvious reasons why a judge who has presided alone at a trial at *nisi prius* should be sufficiently disposed to reserve the case and report the evidence, where there is any plausible ground to maintain, that the verdict is against the evidence; indeed we believe the opinion has latterly been gaining ground, that causes are reserved and reported with rather too great facility.    Counsel so often and so naturally enter into the views and feelings of their clients, and become animated with the zeal and ardor of litigation, that they are not always most competent to weigh the evidence themselves, or judge impartially, what estimate of its preponderance is likely to be formed by others.    It seems therefore important, conformably to the maxim, *interest reipublicæ, ut finis sit litium*, important as well to the rights of individuals, as in regard to public policy, that some check should be held over this tendency to protract litigation so long as there remains any chance of success ; and there seems no safer nor more fit depositary of this power, than the judge who has had an opportunity to take an impartial view of the whole evidence, in the form and manner in which it was given, as well as in the substance, and who from this view, and from his acquaintance with the rules which govern the judgment of courts, in granting new trials, can best decide whether the particular case is one which ought to be revised upon a report.

On the whole, we take the law and practice to be well settled, that it is a question of judicial discretion with the judge at *nisi prius*, whether the evidence shall be reported to sustain a motion for a new trial, and to set aside a verdict as against evidence ; and that this rule is founded upon a wise and just regard to considerations of justice and policy, and to the rights of litigant parties.

*New trial granted.*